**Wali PALMER, Appellant**

v.

**ROY L. HENDRICKS and Peter Harvey.**

No. 06–2991.

United States Court of Appeals, Third Circuit.

Argued: Sept. 14, 2009.

Opinion Filed: Jan. 26, 2010.

**388**

Stephen M. Latimer, Esq. (Argued), Loughlin & Latimer, Hackensack, NJ, for Appellant.

Jack J. Lipari, Esq. (Argued), Assistant Prosecutor, Atlantic County Prosecutor's Officer, Mays Landing, NJ, for Appellees.

Before: SLOVITER, FUENTES, and ALDISERT, Circuit.

## OPINION OF THE COURT

FUENTES, Circuit Judge:

In 1999, a jury found Wali Palmer guilty of multiple crimes related to a 1998 shooting death in an Atlantic City bar. After he unsuccessfully appealed his conviction, Palmer sought post-conviction relief in the New Jersey state courts, asserting that his attorney had been constitutionally ineffective. The New Jersey courts denied Palmer's petition for post-conviction relief, and Palmer thereafter filed a petition for a writ of habeas corpus in the New Jersey District Court pursuant to 28 U.S.C. § 2254. The District Court did not convene an evidentiary hearing and dismissed Palmer's petition.

We granted Palmer's application for a certificate of appealability as to three issues: (1) whether Palmer's trial attorney rendered ineffective assistance of counsel by failing to advise Palmer of his right to testify at trial and at a suppression hearing, (2) whether his attorney was ineffective in failing to inform Palmer that the choice of whether to testify was ultimately Palmer's to make, and (3) whether the District Court should have held an evidentiary hearing to resolve these claims. We conclude that Palmer failed to make a *prima facie* showing of the prejudice element of his ineffective assistance of counsel claims and that the District Court did not abuse its discretion in declining to convene an evidentiary hearing to resolve Palmer's claims.

## I.

In March 1998, Palmer was attacked by a group of young men at a bar in Atlantic City, New Jersey. During the scuffle, Palmer pulled out a nine-millimeter automatic handgun and fired two wild shots. One shot hit the leg of one of his attackers, Shawn Brantley; the other shot hit and killed Palmer's cousin, Junior (Jerry) Cooper, who had been trying to help Palmer. Palmer attempted to assist his cousin, but when he realized that his cousin was not moving, Palmer fled the scene on a bicycle. Police responded to the shooting, gathered a description of Palmer from the wounded Brantley, and arrested Palmer a few blocks from the bar.

After his arrest, Palmer gave several incriminating statements to the police. He later moved, pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to exclude some of the statements. Palmer did not testify during the suppression hearing, and the record is silent as to whether he wanted to testify, what the contents of his testimony would have been, and whether his attorney discussed with him the possibility or propriety of testifying. The trial court eventually admitted most, but not all, of the statements.

Trial was conducted between June 15 and June 23, 1999. After the State rested, Palmer and his attorney, Williams Harris, Esq., engaged in two colloquies on the record, which became relevant during the state post-conviction proceedings. First, once the State had rested, the court and counsel discussed whether all of the State's exhibits had been admitted into evidence, after which the following colloquy took place:

> COURT: If there's an oversight you suddenly discover, we can deal with that. We'll take a recess to afford Mr. Harris to consult with his client.
>
> HARRIS: Thank you judge.
>
> (Recess)
>
> (After Recess)
>
> (Whereupon the following took place out of the presence of the jury)
>
> HARRIS: We're going to rest, judge.
>
> COURT: Okay.

(App.200.)

The next day, before the court charged the jury, the following exchange between the court, defense counsel, and Palmer took place:

> HARRIS: Can I have a moment off the record?
>
> COURT: Sure.
>
> (Off Record)

> HARRIS: Your honor, I'd like to have you read the defendant's election not to testify charge to my client so that we can make a decision on that.
>
> COURT: I'll be glad to do that.
>
> HARRIS: Thank you.
>
> COURT: Mr. Palmer, this is the charge that I give to the jury, if you wish, and it reads as follows. It's the constitutional right of a defendant to remain silent. I charge you that you are not to consider for any purpose or any manner in arriving at your verdict the fact that the defendant did not testify, nor should that fact enter into your deliberations or discussions in any manner or at anytime. The defendant is entitled to have the jury consider all the evidence, and he is entitled to the presumption of innocence even if he does not testify as a witness.
>
> HARRIS: Could I have one second, Judge?
>
> (Discussion off the record. Counsel conferring with Defendant.)

> HARRIS: We're going to ask that you do read it to the jury.
>
> COURT: Mr. Palmer, you wish that given?
>
> PALMER: Yes.
>
> COURT: Thank you, I will.

(App.207.)

The jury was charged and, after deliberating, it found Palmer guilty of aggravated manslaughter, aggravated assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. Palmer was subsequently given a sentence of twenty-two years for the manslaughter conviction, a consecutive sentence of eight years for the assault conviction, and a concurrent sentence of five years for the weapons convictions. Palmer appealed the convictions and sentence, challenging, among other things, the admissibility of

the non-suppressed statements and the severity of his sentence. The New Jersey Appellate Division affirmed.

After his direct appeal failed, Palmer filed a petition for post-conviction relief. In his petition, Palmer argued that Harris had been constitutionally ineffective for, among other things, failing to advise him of his right to testify on his own behalf. Palmer submitted with his petition a sworn affidavit that stated:

- That, my former trial attorney Mr. Williams Harris had never informed me about my right to testify prior to trial, or that the decision not to testify was my decision to make and not Mr. Harris's.

- That, prior to going into the courtroom, Mr. Harris had c[o]me down to the bullpen or holding cell area in the courthouse, and I had asked Mr. Harris when he was going to put me on the stand to tell my side of what happened, and Mr. Harris had told me that he was not going to put me on the stand or testify or call me as a witness.

- That, during my trial, the Judge began reading something about me choosing not to testify, and saying that I chose not to testify, at which point I attempted to respond by telling Mr. Harris that he's making it sound like I don't want to tell my side, and Mr. Harris tapped me to hold up, and asked the judge for a second to speak to me.

- That, Mr. Harris then told me that, because he was not using me as a witness that the judge has to read those things to the jury so that they can't hold anything against me or bring up anything about me not taking the stand, and that Mr. Harris at that point still did not explain to me that I had a right to testify or that the choice of whether to testify was solely mine[ ] to make and not his.

- That, prior to Mr. Harris telling me that he was not going to put me on the stand, I was under the impression that I would get to tell my side of what happened.

- That, I would have taken the stand to testify on my own behalf to explain my side of what really happened if I was allowed to do so.

(App.87a-b.) In sum, Palmer argued that his trial counsel never took the time to explain to him that the choice of whether or not he would testify was for Palmer, not Harris, to make. Palmer also argued that the trial record was inconclusive as to whether Harris ever conveyed this information and that the jury charge colloquy revealed little about whether Palmer understood his right to testify. Accordingly, Palmer requested an evidentiary hearing to subpoena Harris and develop the factual record. Notably, Palmer did not set forth the facts to which he would have testified had he taken the stand at his trial.

The post-conviction relief ("PCR") court rejected Palmer's petition without granting an evidentiary hearing. Emphasizing the colloquy between the court and defense counsel at the close of the State's case, the PCR court found that Palmer and his attorney had been afforded the opportunity for Harris to counsel Palmer as to whether or not to testify. Additionally, relying upon the colloquy between the court, defense counsel, and Palmer just prior to the jury charge, the PCR court found that Palmer understood that he had a choice regarding whether to testify:

Then we get to what transpires with respect to the charge. And Mr. Harris says, "Your Honor, I'd like to have you read the defendant's election not to testify charge to my client so that we can make a decision on that." So we're talking about defendant's election not to testify, the defendant's right not to testi-

fy. Implicit in that is a right to testify. And the charge that was read to him was this: "The defendant in this case chose not to be a witness." First line in the charge. If you choose not to be a witness, you can also choose to be a witness. So by the charge itself, which was read to the defendant, the defendant was told by me with respect to his choices. He chose not to be; implicit in that is a choosing to be. And the last sentence of the charge ... reads that, "The defendant is entitled to have the jury consider all of the evidence and he is entitled to the presumption of innocence even if he does not testify as a witness." Implicit in that as well is the fact that he can testify as a witness. To say that he was never told that he could be a witness, I think is belied by the transcript in this particular case.

(App.47–49.) The Appellate Division upheld this decision "for substantially the same reasons," but also took note of the "pauses in the proceedings for discussions between trial counsel and defendant," which "belie[ ] defendant's contentions that he was unaware of his right to testify and that he had no discussions with his attorney about that right." (App.32.) The New Jersey Supreme Court denied certification.

Having exhausted his state court remedies, Palmer filed a habeas petition pursuant to 28 U.S.C. § 2254 in the District Court. In his petition, Palmer claimed that his trial counsel had been constitutionally ineffective; he likewise asserted a host of additional issues not relevant to this appeal. The District Court denied the entirety of his petition. With regard to the issue of Palmer's right to testify, the District Court quoted the language of the PCR court, endorsing the portion of that opinion that found that Palmer understood his right to testify, and rejected the petition on the grounds that "the New Jersey Courts' adjudication of the claims did not result in a decision that was contrary to, or involved an unreasonable application of *Strickland* or other Supreme .Court holdings." (App.20.) The Court declined to hold an evidentiary hearing and declined to issue a certificate of appealability.

Finally, Palmer appealed to this Court. We granted a certificate of appealability with respect to Palmer's claims that his trial counsel rendered ineffective assistance of counsel for "(1) failing to advise Appellant of his right to testify at trial and at his suppression hearing and (2) failing to inform Appellant that the choice whether to testify was ultimately his to make." (App.23.) We also stated that the parties "shall address whether the District Court should have held an evidentiary hearing to resolve these claims." (App.23.)

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction over Palmer's appeal under 28 U.S.C. §§ 1291 and 2253.

■ The Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1] "requires federal courts collaterally reviewing state proceedings to afford consid-

---

1. The relevant provisions of AEDPA provide:
 (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
 28 U.S.C. § 2254(d).

erable deference to state courts' legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir.2004). Factual determinations made by the state court are presumed to be correct, but may be rebutted by clear and convincing evidence. *See Simmons v. Beard*, 581 F.3d 158, 165 (3d Cir.2009) (citing 28 U.S.C. § 2254(e)(1)). Our standard of review is the same as that of the District Court: because the District Court relied exclusively on the state court record and did not hold an evidentiary hearing, our review is plenary. *See id.* (citing *Jacobs v. Horn*, 395 F.3d 92, 99 (3d Cir.2005)).

■ By its own terms, § 2254(d) only applies to claims already "adjudicated on the merits in State court proceedings." Thus, if a properly preserved claim was not addressed by the state court on the merits, the deferential standards of AEDPA do not apply. *See Appel v. Horn*, 250 F.3d 203, 210 (3d Cir.2001). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." *Id.* (citing *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." *Simmons*, 581 F.3d at 165 (citing *Appel*, 250 F.3d at 210).

### III.

### A.

We address at the outset whether the District Court abused its discretion when it denied Palmer's habeas petition without first convening an evidentiary hearing. We conclude that because Palmer's petition does not contain sufficient "factual allegations, which, if true, would entitle the applicant to federal habeas relief," the District Court did not abuse its discretion in declining Palmer's request for an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007).

1. *The Decision Whether to Hold an Evidentiary Hearing is Subject to the Discretion of the District Court*

■ "Prior to AEDPA, new evidentiary hearings [in habeas cases] were *required* in several circumstances." *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir.2000) (citing *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)) (emphasis in original). We have been clear that "AEDPA, in contrast, *permits* evidentiary hearings on habeas review, but only in a limited number of circumstances." *Id.* (citing 28 U.S.C. § 2254(e)) (emphasis in original). In particular, a district court is permitted to hold an evidentiary hearing on a claim asserted in a § 2254 petition so long as such a hearing is not barred by 28 U.S.C. § 2254(e)(2). Under that section, a habeas court is barred from holding an evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings, *see Williams v. Taylor*, 529 U.S. 420, 430, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Wilson v. Beard*, 426 F.3d 653, 665 (3d Cir.2005), or the petitioner satisfies the criteria set forth in § 2254(e)(2)(A) and (B).[2]

---

2. Under section 2254(e)(2),

> [i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

■ "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro*, 550 U.S. at 468, 127 S.Ct. 1933; *see also Campbell*, 209 F.3d at 287 ("AEDPA, unlike *Townsend* and [*Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) ], does not require that such a hearing be held. Instead, federal courts have discretion to grant a hearing or not."). Although such a decision is discretionary, it is not unconstrained, and *Schriro* identifies two related considerations that guide the habeas court's exercise of discretion.[3]

■ First, in determining whether or not to hold an evidentiary hearing, courts should "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474, 127 S.Ct. 1933. In other words, courts considering the appropriateness of an evidentiary hearing should determine whether the petition presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim. *See, e.g., Campbell v. Burris*, 515 F.3d 172, 184 (3d Cir.2008); *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir.1991); *Smith v. Freeman*, 892 F.2d 331, 338 (3d Cir.1989). The reasons underlying such a consideration are self-evident—given "AEDPA's acknowledged purpose of reducing delays in the execution of state and federal criminal sentences," *Schriro*, 550 U.S. at 475, 127 S.Ct. 1933 (quotation marks, citations, and brackets omitted), a

court should be reluctant to convene an evidentiary hearing to explore the claims of a petitioner whose pleadings are factually insufficient to suggest any entitlement to habeas relief. *See, e.g., Campbell*, 515 F.3d at 184 ("bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing") (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir.1987)); *Anderson v. Att'y Gen. of Kansas*, 425 F.3d 853, 858–59 (10th Cir. 2005) (to warrant an evidentiary hearing, a habeas petitioner's "factual allegations must be specific and particularized, not general or conclusory") (quotation marks and citation omitted).

■ Second, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 474, 127 S.Ct. 1933. That is, even if the factual allegations in the habeas petition are sufficient to make out a *prima facie* claim for habeas relief, a district court may decline to convene an evidentiary hearing if the factual allegations are "contravened by the existing record." *Id.* (citation omitted); *see also Campbell*, 209 F.3d at 290. As the Supreme Court has explained, "[i]f district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts." *Schriro*, 550 U.S. at 475, 127 S.Ct. 1933.

With these twin considerations in mind, we turn to Palmer's petition to determine whether the District Court abused its dis-

---

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

**3.** The Supreme Court has not held, and we do not suggest, that a court is precluded from considering additional factors in determining the appropriateness of an evidentiary hearing.

cretion when it dismissed the petition without first convening an evidentiary hearing.

### 2. Palmer's Inadequate Allegations of Prejudice

 Because we find that the factual allegations underlying Palmer's contention that his trial counsel was constitutionally ineffective are insufficient to show that he is "entitle[d] . . . to federal habeas relief," *id.* at 474, 127 S.Ct. 1933, we conclude that the District Court's decision not to hold an evidentiary hearing was not an abuse of discretion.[4]

"The *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ] standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify." *Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir.2009) (citation omitted). The *Strickland* test has two prongs: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The first prong requires a petitioner to demonstrate that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.; see also Taylor v. Horn*, 504 F.3d 416, 430 (3d Cir.2007). *Strickland*'s second prong requires a petitioner to show that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

Palmer's petition comes up short because it fails to make an adequate showing of prejudice. *See id.* at 697, 104 S.Ct. 2052 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). As we have noted, Palmer's claim for ineffective assistance of counsel turns on his contention that his attorney failed to advise him of his right to testify in his defense and failed to inform him that such a decision was Palmer's to make. Palmer's contentions concerning his attorney's allegedly deficient conduct are fleshed out in the affidavit Palmer submitted in support of his habeas petition. What is *not* fleshed out in the petition, however, is a factual basis suggesting that Palmer was prejudiced by his attorney's alleged conduct. Palmer's affidavit states merely that he "would have taken the stand to testify on [his] own behalf to explain [his] side of what really happened if [he had been] allowed to do so." (App.87b.) The brief he submitted in support of his application for post-conviction relief adds precious little to this bare-bones statement. In a conclusory fashion, Palmer asserts that "because [he] was contending self-defense, it was crucial for him to explain his version of the events, especially[ ] since the requisite de-

4. As an initial matter, we note that Palmer was diligent in his effort to develop the factual basis of his ineffective assistance claim in the state PCR court, in that he submitted an affidavit and requested that the state court convene a hearing on his claim. *See Williams*, 529 U.S. at 430, 120 S.Ct. 1479; *see also Thomas v. Horn*, 570 F.3d 105, 125 (3d Cir.2009) ("the petitioner's request for an evi- dentiary hearing in the state post-conviction court, which was denied, show[s] sufficient diligence to render Section 2254(e)(2) inapplicable") (citing *Thomas v. Varner*, 428 F.3d 491 (3d Cir.2005)). Section 2254(e)(2) thus would not have precluded Palmer from obtaining an evidentiary hearing before the District Court.

termination that the jury had to make[ ] was 'did the petitioner use force in the reasonable belief that such force was necessary to prevent his death or serious injury,['] and there is nobody who could explain what his mental state was better than the petitioner...." (App.87r.) In sum, we know that Palmer wished to testify, and we know the legal theory toward which his testimony would have been directed (self-defense), but we know nothing about the facts to which Palmer would have testified.

■ Palmer's stated desire to tell his side of the story and his conclusory invocation of the words "self-defense" are not sufficient to show "that the decision reached would reasonably likely have been different absent the errors." *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052. We have repeatedly emphasized that "bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing" on a habeas petition. *Campbell,* 515 F.3d at 184 (citation omitted); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 298 (3d Cir.1991). Other circuits have likewise recognized that a habeas petitioner's nonspecific or conclusory allegations of ineffective assistance of counsel do not compel district courts to convene evidentiary hearings in order to delve into the unelaborated factual basis of a habeas petition. *See, e.g., Anderson,* 425 F.3d at 858–59; *Barry v. United States,* 528 F.2d 1094, 1102 (7th Cir.1976). Palmer's petition contains no factual matter regarding *Strickland*'s prejudice prong, and his reference to the legal theory of self-defense is precisely the sort of unadorned legal conclusion that, without supporting factual allegations, we have consistently found insufficient to warrant an evidentiary hearing. *See Campbell,* 515

F.3d at 184; *Zettlemoyer,* 923 F.2d at 298 n. 12; *cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (in the civil pleading context, "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (quotations and citations omitted).

*Zettlemoyer* is on point. In that case, the petitioner contended that an evidentiary hearing was necessary to develop the facts of his ineffective assistance claim, in which he asserted that his attorney had failed to call witnesses who would have provided unspecified testimony related to his diminished-capacity defense. *See Zettlemoyer,* 923 F.2d at 298. As in this case, the petitioner in *Zettlemoyer* identified a witness whose testimony his attorney failed to present and a legal theory toward which the witness's testimony would have been directed, but the petitioner gave no indication of what the contents of the testimony would have been. *See id.* We explained that the petitioner had failed to "set forth facts to support his contention" and held that an evidentiary hearing was not called for. *Id.* at 298, 300–01; *see also Campbell,* 515 F.3d at 184 (where petitioner fails "to allege what this witness would have been able to say that would have been of help to him," an evidentiary hearing is not mandated); *Wells,* 941 F.2d at 259–60. The same conclusion is compelled here. By stating merely that he would have "taken the stand to testify on [his] own behalf to explain [his] side of what really happened," (App.87b), and that this testimony would have addressed the subject of self-defense, Palmer failed to present "factual allegations, which, if true, would entitle the applicant to federal habeas relief" under *Strickland*'s prejudice prong.[5] *Schriro,* 550 U.S. at 474, 127 S.Ct. 1933.

5. Palmer, as the very witness whose testimony was not presented at trial, would certainly have been capable of outlining in his habeas petition the contours of the testimony he would have given. This is not, in other words, a case in which an evidentiary hearing

In *Owens v. United States,* 483 F.3d 48, 59 (1st Cir.2007), the court recognized that "an attorney's failure to inform his client of his right to testify could be prejudicial." The court explained that a "defendant's testimony could be crucial in any trial, and it could be difficult for us to determine whether or not a jury would have found his testimony credible." *Id.* (citations omitted). This is particularly true when the only witness the defendant proffers is himself. The Supreme Court has recognized that "the most important witness for the defense in many criminal cases is the defendant himself." *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). After all, if there were no other witnesses, who would be in a better position to advise the factfinder as to the relevant facts in support of a claimed defense?

On the other hand, the mere assertion of self-defense is not sufficient to raise a plausible showing of prejudice sufficient to warrant an evidentiary hearing. If so, every defendant charged with homicide would make such an assertion. In *Owens,* the court particularized the needed showing when it stated that a defendant who was not informed by counsel or the court of his right to testify and who "would have offered *genuinely exculpatory* testimony" would have been prejudiced by the failure to have been informed of his right to testify. *Owens,* 483 F.3d at 59 (emphasis added). Although the showing that a defendant must make need not be onerous, it must be sufficiently detailed to be "genuinely exculpatory." *Id.*

■ In New Jersey, the assertion of self-defense "requires a jury (1) to discern whether the defendant had a subjective belief at the time that deadly force was necessary and then (2) to determine whether that subjective belief was objec-

tively reasonable." *State v. Jenewicz,* 193 N.J. 440, 940 A.2d 269, 274–75 (2008); *see* N.J. Stat. Ann. 2C:3–4. There are several further caveats to this rule, such as a duty to retreat. *See* N.J. Stat. Ann. 2C:3–4(b). In this case, it is "undisputed that defendant was the only person who drew and fired a gun." (App.35.) In order to have been entitled to an evidentiary hearing, Palmer had the obligation to show his testimony would have been genuinely exculpatory as long as it was not refuted by the existing record. *See Schriro,* 550 U.S. at 474, 127 S.Ct. 1933. Palmer did not make any such showing, and it follows that the Court did not err in denying Palmer a hearing.

### 3. There Is No Presumption of Prejudice in Right–to–Testify Cases

■ Conceding that "the record is silent about the nature of Palmer's probable testimony," (Appellant's Br. 22), Palmer contends that he should be relieved from making any showing as to *Strickland's* prejudice criterion. Although his argument on this point is somewhat muddled, Palmer appears to suggest that when counsel fails to properly advise a client concerning the right to testify, such defective performance by counsel is not susceptible to analysis under *Strickland's* two-prong standard, but is instead a "structural defect" in the entire trial process that requires automatic reversal, irrespective of prejudice. *See Neder v. United States,* 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); *see also, e.g., United States v. Gonzalez–Lopez,* 548 U.S. 140, 148–49, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006); *Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Because, under this theory, Palmer was

---

was needed in order to unearth facts un- known to the petitioner.

not required to make any showing of prejudice in order to prevail on his claim, Palmer insists that the District Court's failure to hold an evidentiary hearing on his petition was an abuse of discretion. We disagree.

■■■■ As an initial matter, Palmer is certainly correct to note that "[t]he Supreme Court has distinguished between two types of constitutional error that occur at both trial and sentencing: 'trial errors,' which are subject to constitutional harmless error analysis, and 'structural defects,' which require automatic reversal or vacatur." *United States v. Stevens*, 223 F.3d 239, 244 (3d Cir.2000) (citing cases); *see also United States v. Vazquez*, 271 F.3d 93, 103 (3d Cir.2001). Certain types of constitutional error are considered structural, and subject to automatic reversal, not only because they have the potential to "infect the entire trial process," *Brecht*, 507 U.S. at 630, 113 S.Ct. 1710, but because of "the difficulty of assessing the effect of the error[s]." *Gonzalez–Lopez*, 548 U.S. at 148–49 & n. 4, 126 S.Ct. 2557 (citing cases). That is, whereas an error of the trial type occurs "during the presentation of the case to the jury" and "may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt,"[6] *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246, the effects of a structural defect "are frequently intangible, difficult to prove ... [or]

cannot be ascertained." *Gonzalez–Lopez*, 548 U.S. at 149 n. 4, 126 S.Ct. 2557 (citations omitted). The list of errors that constitute structural defects is "very limited," *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and "includes complete denial of counsel, biased judges, racial discrimination in selection of grand jury, denial of self-representation at trial, denial of public trial, and [a] seriously defective reasonable doubt instruction." *Stevens*, 223 F.3d at 244 (citing *Neder*, 527 U.S. at 7–8, 119 S.Ct. 1827 (1999)).

We are not persuaded by Palmer's argument that his attorney's alleged failure to advise him of his right to testify falls within this very limited category of errors that are *per se* reversible. First, every authority we are aware of that has addressed the matter of counsel's failure to advise a client of the right to testify has done so under *Strickland's* two-prong framework, which requires the petitioner to "show that [the deficient conduct] actually had an adverse effect on the defense."[7] *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052; *see, e.g., Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir.2009) ("Hodge's speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*."); *Matylinsky*, 577 F.3d at 1097 ("The *Strickland* standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitution-

---

6. Of course, in the collateral review context, even trial-type errors are not examined under the harmless-beyond-a-reasonable-doubt standard employed on direct review, but are instead reviewed under *Brecht's* more deferential standard. *See Brecht*, 507 U.S. at 623, 113 S.Ct. 1710 (the question is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict"). Structural defects are *per se* reversible even in habeas cases. *See id.* at 629–30, 113 S.Ct. 1710.

7. In *Campbell v. Vaughn*, we declined to take a position on this issue, as our threshold determination that the attorney's performance was not deficient rendered the point moot. 209 F.3d at 281 n. 1. As in *Campbell*, we note here that Palmer "does not allege that the [State] deprived him of his right to testify," *id.*, and we express no opinion on the effect that State participation in the deprivation would have on our analysis.

al right to testify.") (citing *Medley v. Runnels*, 506 F.3d 857, 861 (9th Cir.2007)); *Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir.2004) (same); *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir.2001) ("Sayre's self-serving conclusory statement that his testimony would have resulted in an acquittal, standing alone, falls far short of satisfying *Strickland*'s prejudice element."); *Sexton v. French*, 163 F.3d 874, 882 (4th Cir.1998) ("[A] criminal defendant's claim that his trial counsel was constitutionally ineffective because trial counsel failed to inform him of his right to testify ... must satisfy the two-prong test established in *Strickland* ....."); *Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir.1997) (same); *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir.1992) (same).[8]

Moreover, *Strickland* itself cannot be read to carve out a prejudice exception for right-to-testify cases. By its terms, *Strickland* applies to all manner of ineffective assistance of counsel claims. *See Strickland*, 466 U.S. at 684, 104 S.Ct. 2052 ("[W]e granted certiorari to consider the standards by which to judge a contention that the Constitution requires that a criminal judgment be overturned because of the actual ineffective assistance of counsel."). The Court carefully and expressly specified only two categories of ineffective assistance claims in which prejudice may be presumed: cases of "[a]ctual or constructive denial of the assistance of counsel altogether" and cases in which "counsel is burdened by an actual conflict of interest." *Id.* at 692, 104 S.Ct. 2052. Needless to say, neither category is applicable here. Apart from these two categories, *Strickland* makes clear, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a *general requirement* that the defendant *affirmatively prove prejudice.*" *Id.* at 693, 104 S.Ct. 2052 (emphasis added).

Finally, Palmer's claim that his attorney failed to advise him of his right to testify in his own defense is not the sort of structural defect for which the automatic reversal rule is reserved. "[M]ost constitutional errors" are of the trial type, *Fulminante*, 499 U.S. at 306, 111 S.Ct. 1246, and, as the Supreme Court recently emphasized, the few errors that have been classified as structural defects have been so categorized because the nature of the right at issue is such that "the effect of the violation cannot be ascertained" on review under traditional "harmless-error standards." *Gonzalez–Lopez*, 548 U.S. at 148, 149 n. 4, 126 S.Ct. 2557 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)). Hence, *Gonzalez–Lopez* explains, the violation of the Sixth Amendment's public-trial guarantee is considered a structural defect "because 'the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance,'" *id.* at 149 n. 4, 126 S.Ct. 2557 (quoting *Waller v. Georgia*, 467 U.S. 39, 49 n. 9, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)); discriminatory practices in jury selection are structural "because the effect of the violation cannot be ascertained," *id.* (quoting *Vasquez*, 474 U.S. at 263, 106 S.Ct. 617); and the deprivation of a defendant's right to counsel of his or her choosing, the consequences of which "are necessarily unquantifiable and indeterminate," constitutes a structural defect, *id.* at 149, 126 S.Ct. 2557 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282, 113 S.Ct. 2078, 124

---

**8.** Palmer cites *Owens v. United States*, 483 F.3d 48 (1st Cir.2007), contending that the First Circuit has adopted a *per se* prejudice rule. We do not believe that *Owens* stands for the proposition for which Palmer cites it. The case plainly addresses the significance of prejudice in the right-to-testify context, *id.* at 59–60, and endorses *Brown v. Artuz*, 124 F.3d at 80, a Second Circuit case that disposed of a right-to-testify claim by holding that the petitioner's affidavit was inadequate to satisfy *Strickland*'s prejudice prong.

L.Ed.2d 182 (1993)); *see also McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis.").

By contrast, a defendant's testimony (or lack thereof) occurs "during the presentation of the case to the jury" and "may therefore be quantitatively assessed in the context of other evidence presented...." *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246. In other words, when a defendant states, "I would have testified to X, Y, and Z, but my attorney would not put me on the stand," the significance of such testimony can be evaluated in the context of the remainder of the evidence in order to assess the impact of the constitutional violation; this is precisely the type of constitutional error that is amenable to conventional review in the context of the trial and evidence as a whole. *See id.; Gonzalez–Lopez,* 548 U.S. at 150, 126 S.Ct. 2557. In contrast, when a defendant is, for example, denied the right to the attorney of his choice, tried before a biased judge, or denied the right to represent himself at trial, the impact of the violation defies harmless error analysis, because any such analysis "would be a speculative inquiry into what might have occurred in an alternate universe." *Gonzalez–Lopez,* 548 U.S. at 150, 126 S.Ct. 2557.

Of course, the defendant's own testimony is very likely to be highly important— as we noted above, "the most important witness for the defense in many criminal cases is the defendant himself," *Rock,* 483 U.S. at 52, 107 S.Ct. 2704. As the Ninth Circuit has noted, "[a]s a general matter, it is only the most extraordinary of trials in which a denial of the defendant's right to testify can be said to be harmless beyond a reasonable doubt." *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir.1991). But it is precisely the fact that the contours of the defendant's probable testimony (as expressed in an affidavit on collateral review) can be assessed in the context of the evidence as a whole that distinguishes the right-to-testify issue from structural defects, the effects of which are inherently elusive, intangible, and not susceptible to harmless error review. *See Gonzalez–Lopez,* 548 U.S. at 148, 149 n. 4, 126 S.Ct. 2557. In the absence of any Supreme Court authority to the contrary, and in light of the unanimous determination by the Courts of Appeals that have addressed the issue that *Strickland*'s two-prong test applies in right-to-testify cases, we conclude that Palmer was not excused from making a *prima facie* showing of prejudice in his petition for post-conviction relief. *See Strickland,* 466 U.S. at 693, 104 S.Ct. 2052 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice").

In sum, Palmer was required to prove prejudice in order to prevail on his ineffective assistance claim, *id.,* and factual allegations of prejudice were thus an essential component to a *prima facie* showing of his entitlement to habeas relief. Because Palmer's petition contains insufficient factual allegations to demonstrate his entitlement to relief, we conclude that the District Court did not abuse its discretion in declining to convene an evidentiary hearing. *See, e.g., Campbell,* 515 F.3d at 184; *Zettlemoyer,* 923 F.2d at 300–301.

### B.

Our determination that Palmer's petition fails to present a *prima facie* showing of ineffective assistance of counsel and our decision that the District Court did not abuse its discretion when it declined to

hold an evidentiary hearing are sufficient to resolve the remaining question raised in this appeal—namely, whether Palmer's attorney rendered ineffective assistance of counsel by failing to advise Palmer of his right to testify and by failing to inform Palmer that the decision was Palmer's to make. In order to prevail on his claim that his attorney rendered constitutionally deficient assistance, Palmer was required to establish prejudice by "show[ing] that [the deficient conduct] actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052. Palmer's petition is plainly insufficient to make any such showing, and, as we have explained, his stated desire to tell his side of the story "falls far short of satisfying *Strickland*'s prejudice element." *Sayre*, 238 F.3d at 635.

We recognize that because the state courts did not decide the prejudice issue on the merits, AEDPA's deferential standards do not apply to our resolution of the prejudice question. *See Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis."); *see also Appel*, 250 F.3d at 210 (AEDPA deference does not apply to issue not adjudicated on the merits by the state courts). Our discussion herein makes clear that Palmer's petition is plainly insufficient to demonstrate prejudice under de novo review. We therefore conclude that the District Court correctly dismissed Palmer's petition.[9]

9. In light of our conclusion that Palmer was not prejudiced by his attorney's conduct, we do not address the PCR courts' factual finding that Palmer was informed of his right to testify. *See Strickland*, 466 U.S. at 697, 104 S.Ct.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").