NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1271
_____

JERREL JAYNES,

Appellant

v.

JAMES L. GRACE; THE DISTRICT
ATTORNEY OF THE COUNTY OF
PHILADELPHIA; THE ATTORNEY
GENERAL OF THE STATE OF PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-CV-2567)
District Judge:  Honorable J. Curtis Joyner

_____

Argued June 5, 2008

Before:  AMBRO, CHAGARES, and COWEN, Circuit Judges.

(Filed:  August 19, 2011)

Teri B. Himebaugh, Esq. (Argued)
220 Stallion Lane
Schwenksville, PA 19473
*Counsel for Appellant*

David C. Glebe, Esq. (Argued)
District Attorney's Office
Three South Penn Square

Philadelphia, PA  19107
*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Jerrel Jaynes appeals the order of the U.S. District Court for the Eastern District of

Pennsylvania denying his petition for writ of habeas corpus.  For the reasons set forth

below, we will vacate the order and remand for the District Court to conduct an

evidentiary hearing.

I.

Because the facts are well known to the parties, we will discuss them only briefly.

On July 20, 1995 at about 1:00 a.m., William McClam was parking his car, when another

car pulled up and the man in the passenger seat shot McClam, hitting him in the back.

The car then sped off.

When the police arrived at the scene, McClam identified the shooter as "Jerrel."

McClam subsequently explained that he and Jerrel Jaynes' girlfriend, Brooky Price, had

been in an altercation and he believed that Jaynes had shot him in retaliation for the

incident.  The gun, car, and clothing McClam described the shooter as wearing were

never found.

Jaynes was convicted of aggravated assault and other offenses in January 1997

after a trial in the Court of Common Pleas of Pennsylvania.  The sole evidence against

2

Jaynes at trial was the victim's identification of him. Jaynes subsequently appealed to the Pennsylvania Superior Court, arguing, *inter alia*, that trial counsel, Louis T. Savino, rendered ineffective assistance because he failed to introduce James Wing as an alibi witness at trial.

In support of his ineffective assistance claim, Jaynes attached an affidavit by Wing, explaining that he lived in the same house as Jaynes and had seen Jaynes at home on the night of shooting. According to Wing, Jaynes was babysitting his niece that night and "[t]here was no way possible that Jerrel Jaynes left the house that night, without me seeing him go down the stairs or asking [his mother] or myself to watch the child." Supplemental Appendix ("SA") 7.

According to Wing, he gave counsel this information several weeks before trial, and counsel told Wing that "he would get back to [him]," but Wing never heard from counsel again. SA 7-8. Although Wing did not receive a subpoena to appear in court, he decided to attend the trial. During a recess, Jaynes told his counsel that Wing was present, and Jaynes' counsel interviewed Wing about his recollection of the night of the shooting. Counsel did not, however, ask Wing to testify.

The Superior Court affirmed the Court of Common Pleas' judgment of sentence. The court concluded that Wing's affidavit "fail[ed] to allege sufficient facts to create an alibi defense that would, if absent from trial, so prejudice defendant that he could not receive a fair trial." SA 19. According to the court, "Mr. Wing alleges that he saw appellant between 8:30 and 9:30, but does not claim with assurance that appellant did not

3

leave the house. Therefore, appellant has not fulfilled the threshold requirements to establish a claim for relief due to counsel's ineffectiveness." SA 19 (citation omitted). The Pennsylvania Supreme Court denied Jaynes' request for allocatur.

Jaynes subsequently filed a petition under the Pennsylvania Post Conviction Relief Act ("PCRA"). Counsel was appointed, but did not raise the issue of trial counsel ineffectiveness for failure to notice the alibi witness. The PCRA court dismissed the petition and the Superior Court affirmed its decision. Jaynes' request for allocatur was again denied by the Pennsylvania Supreme Court.

Jaynes then filed this federal habeas petition. With respect to the issue on appeal here, Jaynes argued that trial counsel was ineffective for failing to notice and present Wing as an alibi witness. The District Court referred the petition to Magistrate Judge Jacob P. Hart. Magistrate Judge Hart issued a Report and Recommendation (R&R), recommending that the District Court grant Jaynes a new trial to allow the alibi witness testimony to be presented. The Magistrate Judge rejected the Superior Court's conclusion that Wing's affidavit was insufficient to establish an alibi defense and determined that Jaynes was prejudiced by counsel's failure to call Wing.

The Commonwealth objected to the R&R, and the District Court sustained the objections, denying the habeas petition in its entirety. The District Court agreed with the Magistrate Judge that "[c]ontrary to the finding of the Superior Court, . . . Mr. Wing *did* claim with assurance that Mr. Jaynes did not leave the house. Thus, we find that in this respect, the state court's decision was erroneous." Appendix ("App.") 35 (emphasis in

4

original).  The District Court, however, determined that "Mr. Wing's alibi testimony may not have been as air-tight as Petitioner would have us believe."  App. 37.  The District Court concluded that "as we are required to give deference to trial counsel's strategy, we cannot say with assurance that Mr. Savino's representation and trial strategy was objectively unreasonable."  App. 37.

This timely appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253.  We review de novo whether the District Court applied the appropriate standard of review in light of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  See Taylor v. Horn, 504 F.3d 416, 428 (3d Cir. 2007).

Under 28 U.S.C. § 2254, as amended by AEDPA, a state court's legal and factual determinations on the merits are entitled to deference.  Lambert v. Blackwell, 387 F.3d 210, 238 (3d Cir. 2004).  Federal courts cannot grant habeas relief in claims adjudicated on the merits "[u]nless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),(2).

We have plenary review of the District Court's determination regarding exhaustion.  Holloway v. Horn, 355 F.3d 707, 713 (3d Cir. 2004).

5

## III.

Before a federal court can review a habeas petition under § 2254, a petitioner must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). A petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." Stevens v. Del. Corr. Ctr., 295 F.3d 361, 369 (3d Cir. 2002) (quoting Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002)). Jaynes raised his claim regarding counsel's ineffectiveness for failure to present the alibi witness on direct appeal, the Superior Court rejected the claim on the merits, and the Pennsylvania Supreme Court denied the petition for leave to appeal. Jaynes therefore exhausted his state court remedies, and we next consider the merits of his ineffective assistance of counsel claim.

## IV.

Jaynes argues that the District Court erred in denying his habeas petition, claiming that counsel's representation fell below an objective standard of reasonableness and he was prejudiced by his counsel's failure to call the alibi witness. In the alternative, Jaynes requests that we remand this case for an evidentiary hearing. For the reasons stated below, we will grant Jaynes' request for remand.

At the outset, we consider whether AEDPA deference is appropriate. As both the District Court and the Magistrate Judge correctly observed, the Superior Court erred in finding that Wing "d[id] not claim with assurance that appellant did not leave the house." SA 19. Indeed, Wing asserted that "[t]here was no way possible that Jerrel Jaynes left the

6

house that night." SA 7. Upon considering this error, the Magistrate Judge determined that "the Superior Court's conclusion regarding prejudice was based on an unreasonable determination of the facts which resulted in an unreasonable application of the [Strickland v. Washington, 466 U.S. 668 (1984)] standard." App. 6 (citing 28 U.S.C. § 2254(d)(2)). The District Court disagreed and deferred to the state court's decision. We need not decide this issue, however, as we reach the same result either under *de novo* review or in light of AEDPA deference. See Taylor, 504 F.3d at 453 (explaining that "under either standard of review," AEDPA or *de novo*, habeas petitioner's claim was meritless) (citing Holloway, 335 F.3d at 719 & n.6, 729 (determining that under either *de novo* or AEDPA standard of review, result in habeas case would be the same)).

It is well-established that under Strickland, a "defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (quotation marks omitted). Significantly, however, there is a "tiered structure with respect to Strickland's strategic presumptions." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005). If the record indicates that counsel has conducted a "thorough investigation of the relevant law and facts," then a "strong," "virtually unchallengeable" presumption attaches to counsel's actions. Id. at 500. Otherwise, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.

The current record in this case indicates that the extent of Savino's investigation involved calling Wing three to four weeks before trial, listening to Wing's account of events, and never following up – a far cry from the kind of "thorough investigation of the law and facts" to which a "strong presumption" of reasonability attaches. As a result, Savino's conduct is "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691. A "defendant can rebut this 'weak' presumption by showing either that the conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." Thomas, 428 F.3d at 499-500 (footnote omitted). In regard to the former approach, we have explicitly noted "that an inquiry into whether counsel actually had some strategy is permissible." Id. at 499 n.7. Such an inquiry seems particularly appropriate in a case such as this, in which the record discloses little and that virtual silence is attributable neither "to lack of diligence on the part of the petitioner [n]or . . . to the unavailability of counsel," id. at 500, but rather to the frustration of petitioner's attempts to develop the requisite facts. Indeed, the record before this Court only casts doubt on Savino's decision not to provide notice of an alibi or call Wing as a witness at trial. Wing's testimony would have directly contradicted the only evidence presented at trial against Jaynes – the victim's identification testimony. Significantly, "'an attorney's failure to present available exculpatory evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it.'" Pavel v. Hollins, 261 F.3d 210, 220 (2d Cir. 2001) (quoting Griffin v. Warden, 970 F.2d 1355, 1358 (4th Cir. 1992)).

8

The District Court does not appear to have previously considered the necessity of an evidentiary hearing, at least not explicitly.[1]  Both of the considerations identified by this Court in Palmer v. Hendricks, 592 F.3d 386 (3d Cir. 2010), however, counsel in favour of such a hearing.  Specifically, (1) assuming that Jaynes' factual allegations are true, "the petition presents a prima facie showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim," and (2) "the factual allegations are [not] 'contravened by the existing record'" in this case.  Palmer, 592 F.3d at 393 (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).  Accordingly, rather than engage in speculation regarding Savino's strategy, we will remand to the District Court to conduct an evidentiary hearing.

V.

For the foregoing reasons, we will vacate the order denying Jaynes' petition and remand to the District Court to conduct an evidentiary hearing.

---

[1] This failure may be attributable to two factors:  first, the case came before the District Court in the form of the Magistrate Judge's R&R granting Jaynes habeas relief without the aid of an evidentiary hearing, and second – and perhaps related – Jaynes did not request an evidentiary hearing before the District Court.  Jaynes did, however, request an evidentiary hearing before the state court, and was thus "diligent in his attempt to develop a factual basis for his claim in the state court proceedings."  Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010).  As a result, the District Court is not barred from holding an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).