# United States Court of Appeals
## For the First Circuit

No. 15-1770

JAMES J. SMITH,

Petitioner, Appellant,

v.

THOMAS DICKHAUT,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Kayatta and Barron, Circuit Judges,
McAuliffe,* District Judge.

Stewart T. Graham, Jr., with whom Graham & Graham was on brief, for appellant.
Maura Healey, with whom Jennifer K. Zalnasky and the Office of the Massachusetts Attorney General was on brief, for appellee.

September 7, 2016

_____

*Of the District of New Hampshire, sitting by designation.

**McAULIFFE, District Judge**.  Petitioner, James Smith, was convicted by a jury in the Commonwealth of Massachusetts of first-degree murder, armed home invasion, and unlawful possession of a firearm.  His motion for a new trial was denied and he appealed both the denial of that motion and his convictions to the Massachusetts Supreme Judicial Court ("SJC").  The SJC consolidated those appeals and reversed Smith's conviction for armed home invasion, but upheld the remaining convictions.  The SJC also affirmed the trial judge's denial of Smith's motion for a new trial.  Commonwealth v. Smith, 946 N.E.2d 95 (2011).  Smith then sought federal habeas corpus relief from the United States District Court for the District of Massachusetts, claiming that he had been deprived of his constitutionally protected right to effective legal representation when trial counsel failed to fully and properly advise him about his right to testify at trial.  In a closely related claim, Smith also asserted that, because he waived his right to testify based upon counsel's erroneous (and constitutionally deficient) advice, that waiver was invalid.  And, finally, Smith asserted that trial counsel provided deficient representation by failing to marshal and present exculpatory evidence in his defense.  The district court denied the petition and Smith has appealed.  We affirm.

## I. Standard of Review

The district court's denial of Smith's petition for habeas corpus relief is reviewed de novo. Barbosa v. Mitchell, 812 F.3d 62, 66 (1st Cir. 2016).

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and its amendments to 28 U.S.C. § 2254, the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited. A federal court may disturb a state conviction if the state court's resolution of the constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412—13 (2000). The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> [T]he most important point is that an unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410—11 (emphasis in original). So, to prevail, a state habeas petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Alternatively, federal habeas relief may be granted if the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Section 2254(e)(1) goes on to provide that "a determination of a factual issue made by a State court shall be presumed to be correct" and the habeas petitioner "shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."

Here, the parties disagree at the outset about the degree of deference we should afford to factual findings made by the state court. Pointing to the language of § 2254(d)(2), Smith asserts that he need only demonstrate that such factual findings were "unreasonable." The Commonwealth, on the other hand, says factual findings made by the state court are, under § 2254(e)(1), presumed to be correct, and Smith bears the burden of rebutting that presumption by clear and convincing evidence. As this court has previously noted, the circuit courts of appeal disagree as to the proper interplay between §§ 2254(d)(2) and 2254(e)(1). See, e.g., John v. Russo, 561 F.3d 88, 92 (1st Cir. 2009); Teti v. Bender, 507 F.3d 50, 58–59 (1st Cir. 2007).

The Supreme Court seemed poised to clarify the point in 2010, when it granted certiorari to answer "the question of how §§ 2254(d)(2) and (e)(1) fit together." Wood v. Allen, 558 U.S. 290, 300 (2010). In the end, however, the Court concluded that the outcome of the case before it did "not turn on any interpretive difference regarding the relationship between these provisions." Id. Even giving the petitioner in Wood the benefit of § 2254(d)(2)'s standard (which is less deferential to state court findings of fact), the Court concluded that he was not entitled to

- 5 -

habeas relief because the state court's findings of fact were not unreasonable in light of the evidence presented. Id. at 301.

This court has noted the Supreme Court's silence on precisely how section 2254(d)(2) and 2254(e)(1) fit together, and it has yet to address a case in which it was necessary to resolve that issue. See, e.g., Robidoux v. O'Brien, 643 F.3d 334, 338 n.3 (1st Cir. 2011) ("We have previously declined to delve into the relationship between subsections (d)(2) and (e)(1), as has the Supreme Court, and again have no need to do so.") (citations omitted). At the same time, this circuit has routinely held petitioners to the § 2254(e)(1) "clear and convincing" standard without reference to § 2254(d)(2), albeit not in a case in which resolving the fit between the two sections would appear to have made any difference. See, e.g., Linton v. Saba, 812 F.3d 112, 116 (1st Cir. 2016) ("We must accept the state court findings of fact unless convinced by clear and convincing evidence that they are in error.") (citations and internal punctuation omitted); Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) ("State court findings of fact are presumed to be correct unless the petitioner rebuts this presumption of correctness with clear and convincing evidence.") (citations and internal punctuation omitted). The record in this case allows us to proceed in similar fashion, because even if we were to assess the state court's factual determinations under the

more petitioner-friendly standard set out in § 2254(d)(2), rather than the more deferential standard in 2254(e)(1), Smith would still not be entitled to the relief he seeks.

## II. Factual Background

In light of the evidence presented at Smith's trial and the jury's verdict, the SJC found the relevant facts underlying his convictions to be as follows. In June of 2006, Smith moved into the apartment of Patricia Higgs in North Adams, Massachusetts. During his relatively brief stay, Smith sold a variety of drugs from Higgs' apartment, including cocaine, crack, and heroin. He employed Higgs in the business, compensating her with money and drugs. Eventually, however, Higgs and Smith had a falling out and she asked him to leave. About two weeks later, Kijona Osmond, the murder victim, moved into Higgs' apartment and began operating a similar drug-trafficking business. At that point, five people were living in the apartment including Higgs, Osmond, and a woman named Angela Stark.

On July 26, 2006, at approximately 2:00 a.m., Smith went to a Dunkin' Donuts near Higgs' apartment and spoke with one of the store's employees. Shortly before leaving, he posed an unusual question: Whether she would contact the police if she saw someone get shot. Smith then went to Higgs' apartment and knocked

on the door. Higgs opened the door and saw Smith standing in the threshold holding a firearm. Smith grabbed Higgs by the neck and threw her against the wall and, while holding the weapon to her head, demanded to know where the "stuff" was. Higgs said, "Please don't do this, my baby is in the other room." Stark, who was in the kitchen when Smith entered the apartment, confirmed the violent nature of his entry and testified that Higgs pleaded with him, "don't do it, my baby is here."

At that point, Osmond tried to make his way to the kitchen, where the back door to the apartment was located. Smith released Higgs and attempted to grab Osmond's shirt. Osmond turned to confront Smith, at which point Smith fired a single round into Osmond's neck. Osmond immediately collapsed onto his stomach, with the left side of his face on the floor. Smith stepped over Osmond, straddled his prone body, and fired a second (fatal) shot into the back of his head. Smith then leaned down to remove money and drugs from Osmond's pockets and, after threatening the remaining occupants of the apartment and warning them to keep their mouths shut, fled the building.

Higgs, who had escaped the apartment when Smith released her to confront Osmond, returned and discussed with Stark the potential legal implications should police discover contraband in Osmond's pockets when they arrived. The women went through his

pockets, removed whatever Smith had left behind, and left the apartment. Higgs then telephoned police on Stark's mobile phone. North Adams police officers, as well as a Massachusetts state trooper, soon arrived at the scene, where they discovered the victim's body lying on the floor with a loaded handgun beside him.

Meanwhile, Smith went to the apartment of some acquaintances, where he forced the door open. He told them he had threatened Higgs and held a gun to her head. He also admitted he shot Osmond in the throat, saying he thought Osmond was going to shoot him. Smith also confessed that after Osmond had fallen to the floor, he shot him again in the back of the head. One of the occupants of the apartment testified at trial that Smith had said that he was motivated by the fact that "they were making the money and he wasn't." Smith then told the occupants of the apartment that because they were now witnesses to his confession, he was going to have to kill them as well, saying "There will be no witnesses" and, therefore, "Everyone must die." Eventually, however, Smith calmed down and fell asleep. He was awakened when police officers came to the apartment to interview its occupants. Smith fled out a bedroom window but was soon located and taken into custody by North Adams police officers.

### III. Procedural Background

Smith was tried in the Berkshire County Superior Court. A jury convicted him of murder in the first degree on theories of both deliberate premeditation and felony-murder (the predicate crime being armed home invasion, for which Smith was also convicted). The jury also found Smith guilty of unlawful possession of a firearm. Smith was acquitted, however, of three less serious crimes relating to threats he allegedly made against the occupants of Higgs' apartment.

On appeal, the SJC reversed Smith's armed home invasion conviction, concluding that the indictment failed to adequately identify the specific home invasion at issue, i.e., Smith's forcible entry into Higgs' apartment, or his subsequent forcible entry into the apartment of his acquaintances. Nevertheless, the court upheld Smith's felony-murder conviction, concluding that because the trial court's instructions to the jury focused the jury's consideration on the incident at Higgs' apartment, there could be no doubt that Smith was convicted of felony-murder on the appropriate predicate offense: the armed home invasion of Higgs' apartment. Finally, the SJC affirmed the trial court's denial of Smith's motion for a new trial, concluding that Smith had validly waived his right to testify at trial, and holding that his defense

counsel did not mislead him or provide constitutionally deficient representation.

Before us are three of the claims Smith raised in his federal habeas petition: first, that he waived his right to testify at trial based upon incorrect legal advice and, therefore, the waiver was invalid; second, that trial counsel provided constitutionally deficient representation when he failed to properly advise Smith about important consequences associated with waiving his right to testify; and, finally, that trial counsel provided constitutionally deficient representation by failing to marshal available evidence to rebut the armed home invasion charge, undermine the felony-murder charge, and support Smith's claim of self-defense.

In a thorough and thoughtful opinion, the district court rejected each claim. The district court granted Smith a certificate of appealability and he appealed.

## IV. Discussion

To prevail before the SJC on his ineffective assistance claims, Smith bore the burden of satisfying the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984). That is, he was required to demonstrate that counsel's performance fell below an objective threshold of reasonable care and that

- 11 -

counsel's deficient performance prejudiced him.  See id. at 687.

To satisfy the prejudice test, Smith had to establish that, but

for counsel's deficient performance, there was a reasonable

probability that the outcome of his trial would have been

different.  See Turner v. United States, 699 F.3d 578, 584 (1st

Cir. 2012).  "A reasonable probability is a probability sufficient

to undermine confidence in the outcome."  Strickland, 466 U.S. at

694.  In other words, the likelihood that the outcome of the trial

would have been different "must be substantial, not just

conceivable."  Harrington, 562 U.S. at 112.

        In the context of a federal habeas proceeding, claims of

ineffective assistance of counsel present mixed questions of law

and fact which are reviewed under § 2254(d)(1)'s "unreasonable

application" clause.  See Teti, 507 F.3d at 57.  Consequently, the

question before this court (as it was before the district court)

is whether the SJC's application of the Strickland standard to

Smith's ineffective assistance claims was "unreasonable."  Our

inquiry is quite different from a de novo determination of whether

trial counsel's performance fell below the standards established

in Strickland.

> Were that the inquiry, the analysis would be no different
> than if, for example, this Court were adjudicating a
> Strickland claim on direct review of a criminal
> conviction in a United States district court.  Under
> AEDPA, though, it is a necessary premise that the two

questions are different.  For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law."  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington, 562 U.S. at 101 (quoting Williams, 529 U.S. at 410). In this case, then, we must look for an "unreasonable application" of Strickland.

## A.    Advice Regarding Smith's Waiver of His Right to Testify

Turning first to Smith's claim of ineffective assistance as it relates to his testimonial waiver, we start with the basics: "a defendant's right to testify in his own defense is a 'fundamental constitutional right' and is 'essential to due process of law in a fair adversary process.'"  Casiano-Jiménez v. United States, 817 F.3d 816, 820 (1st Cir. 2016) (quoting Rock v. Arkansas, 483 U.S. 44, 51, 53 n.10 (1987)).  The defendant's lawyer "bears the primary responsibility of informing and advising the defendant of this right, including its strategic ramifications." Id.  Counsel is also obliged to explain that the decision to testify or not belongs exclusively to the defendant.  Importantly, however, no specific requirements govern the nature or content of those essential conversations between counsel and his or her client.  See id.  ("In determining whether a lawyer has adequately

- 13 -

apprised his client of this fundamental right, no particular formulation is required. There are no magic words; the inquiry is whether 'some sort of conversation' has occurred between the attorney and his client, such that 'the client can make a knowing and informed decision' regarding whether to testify in his own defense.") (quoting Owens v. United States, 483 F.3d 48, 60 n.10 (1st Cir. 2007)).

In support of his assertion that trial counsel provided constitutionally deficient advice regarding his right to testify, Smith relies upon his own affidavit and an affidavit filed by trial counsel. In the latter, counsel relates that: (1) he did discuss with Smith whether or not he should testify; (2) Smith informed counsel of his desire to testify, so he might tell his version of the events; (3) counsel informed Smith that, on cross-examination, the prosecutor would not simply allow him to re-tell his story but would, instead, restrict him to answering questions put to him; (4) counsel advised Smith that, based upon the evidence introduced by the Commonwealth, he did not believe Smith had a viable theory of self-defense; (5) counsel told Smith that, in his professional opinion, he did not believe the jury would credit Smith's proposed testimony; and, finally, (6) counsel told Smith that if he followed counsel's advice and did not testify, then if he were convicted,

he could challenge both his waiver of the right to testify and counsel's advice post-trial.

Seizing upon that final bit of advice, Smith says he understood counsel to mean that his decision to waive the right to testify was "not final" and that, if convicted, he could obtain a reversal on appeal by simply challenging counsel's advice and his waiver. Moreover, he claims he waived his right to testify based upon that (mistaken) understanding of counsel's advice. Consequently, says Smith, his waiver was not valid.

Trial counsel's actual advice — "that if [Smith] followed my advice and did not testify, then if he were convicted he could challenge both his failure to testify and my advice post-trial" — seems, on its face, to be rather unremarkable. It is certainly correct to say that Smith would be free, if convicted, to challenge counsel's advice on appeal, presumably arguing that for some reason it was patently unreasonable and amounted to ineffective assistance. Additionally, Smith could argue (as he does) that his testimonial waiver was invalid to the extent he relied upon counsel's purportedly unsound advice. Of course, if counsel had actually told Smith that he could count on obtaining a reversal on appeal if he waived his testimonial right and was subsequently convicted, a legitimate issue would arise with

- 15 -

respect to both the competency of counsel's representation and the validity of Smith's waiver.

But, both of the Massachusetts courts that reviewed Smith's claims concluded that did not happen. The state trial court determined that counsel's advice to Smith concerning his right to testify (and whether he should exercise or waive that right) was neither incorrect nor constitutionally deficient. The trial judge also found that Smith's claimed understanding of counsel's advice was not credible. The court supported its credibility determination by noting that: (1) Smith's affidavit was self-serving and conclusory; (2) defense counsel was "very experienced" and "is frequently called upon in murder cases"; (3) the record "contains ample evidence that [Petitioner] and his trial counsel discussed his right to testify"; and, (4) through his affidavit, trial counsel "did not indicate any willingness to accept fault for allegedly misadvising" Smith. Having fully considered Smith's claim, as well as the legal and factual support upon which he relied, the trial judge concluded that the "record is clear . . . that [Petitioner] made a voluntary, strategic decision not to testify after adequate consultation with his trial counsel."

On appeal, the SJC also construed Smith's affidavit as claiming that he thought his decision not to testify would allow

- 16 -

him to later obtain a reversal of any conviction. Smith, 946 N.E.2d at 105—06. See also id. at 106 (construing Smith's "purported misunderstanding" of counsel's advice to mean that he could have a "do over" if he followed counsel's advice, elected not to testify, and was subsequently convicted). Like the trial court, the SJC concluded that Smith failed to demonstrate that trial counsel provided either an erroneous or an incomplete explanation of his constitutionally protected right to testify at trial. The SJC noted, inter alia, that trial counsel was both "thorough and highly experienced" (to the point of documenting on the record the fact that he and Smith had discussed whether Smith wished to testify), counsel informed Smith that he had an absolute right to testify, and counsel explained to Smith why he believed Smith should elect not to testify.[1] Indeed, the SJC found "no error in the advice offered by counsel." The SJC also affirmed

---

[1]    Counsel's transcribed conversation with Smith included the following exchange:

> Counsel: [Mr. Smith], I have asked to have the "steno" here because you and I have had conversations in the back that are in private and we have discussed whether or not you are desirous of taking the stand and testifying in this matter. I have explained to you that it's your absolute right. I have offered you an opinion relative to what I think you should do. And I would like you to clarify for the record whether or not you wish to testify in this particular matter.

> [Smith]:  No, I wish not to testify in this matter.

the trial judge's factual finding that Smith's affidavit statements regarding his understanding (or misunderstanding) of counsel's advice were not credible.

We agree with the district court that Smith failed to demonstrate that the SJC's resolution of his ineffective assistance claim was "contrary to, or involved an unreasonable application of, clearly established Federal law," as expressed in Strickland. 28 U.S.C. § 2254(d)(1). Nor has Smith demonstrated that either the trial judge's or the SJC's credibility determination was "based on an unreasonable determination of facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). While counsel's advice arguably might have been more precise or complete (say, by informing Smith that if he were convicted, the probability of successfully challenging counsel's advice and/or his waiver on appeal was very low), it would not be unreasonable to conclude, as the SJC did, that the advice given was neither inaccurate nor misleading. Nor has Smith shown that the state courts unreasonably rejected his claimed confusion about his appellate rights as not credible.

For the same reasons, it necessarily follows that Smith's renewed challenge to his decision to waive his right to testify fails. The SJC's conclusion that Smith's waiver was not induced by erroneous legal advice was not unreasonable under

- 18 -

§ 2254(d)(1), nor was its decision to defer to the trial court's factual finding that Smith had not actually misunderstood counsel's advice unreasonable under § 2254(d)(2). Those legal conclusions and factual findings, which Smith has not shown to have been incorrect or unreasonable in any respect, preclude his invalid waiver theory.[2]

Parenthetically, with respect to Smith's ineffective assistance claim, the court notes that even if Smith had shown that trial counsel's advice was incorrect and amounted to ineffective assistance <u>and</u> if he further demonstrated that the SJC's resolution of his claim was based upon an unreasonable application of the first part of the <u>Strickland</u> test, his claim would still fail, because he has not shown any prejudice resulting from counsel's allegedly incorrect advice. <u>See generally</u> <u>Strickland</u>, 466 U.S. at 694. Specifically, Smith has not shown (nor, given the record evidence, could he show) that, had he

---

2    As the district court noted, Smith's prior experience in the criminal justice system is one of the several factors that undermine his asserted misunderstanding of trial counsel's advice about waiving the right to testify and/or his appellate rights. <u>See, e.g.</u>, <u>Parke</u> v. <u>Raley</u>, 506 U.S. 20, 37 (1992) ("A defendant's prior experience with the criminal justice system [is] relevant to the question of whether he knowingly waived constitutional rights."). Additionally, the district court noted that Smith has pled guilty to other charges on at least one occasion in the past, thereby demonstrating a familiarity with the process of waiving constitutional rights.

testified, there is a reasonable probability that the outcome of his trial would have been different.

As the SJC discussed in detail, in order to credit Smith's version of events regarding the armed home invasion, the jury would have had to "disbelieve the testimony of two percipient witnesses, Higgs and Stark, whose testimony suggested a violent entrance to the apartment." It would also have had to disbelieve the testimony of Smith's acquaintances, to whom he had confessed that, upon entering Higgs' apartment, he held a gun to her head. Additionally, to accept Smith's claim that he acted in self-defense, the jury would have had to be persuaded that: Smith entered the apartment peacefully and posed no apparent threat to anyone, yet the victim approached him, drew a firearm, and threatened him with it; although Smith's weapon was not drawn, he was able to access it and fire two shots in self-defense before the victim could respond; and, there was a plausible explanation for the fact that, despite Smith's claim of rapid defensive shooting, the two bullets from his firearm entered the victim's body at very different angles and from different directions (evidence that, according to the medical examiner, supported the Commonwealth's theory that the second, fatal shot was fired while the victim was lying face-down on the floor). Both the trial court and the SJC concluded that Smith's proposed version of the

events in question was simply not credible —— a conclusion shared by Smith's experienced trial counsel, as expressed in his affidavit. Finally, had Smith testified at trial, he obviously would have exposed himself to potential cross-examination and impeachment concerning his criminal activities in Higgs' apartment, his prior convictions, and the inconsistent statements he made to the occupants of the apartment to which he fled (about why he had killed the victim).

In short, even if Smith had testified and presented his version of events to the jury, it is not reasonably probable that the outcome of his trial would have been different. See Harrington, 562 U.S. at 112. Consequently, even if trial counsel's advice were deemed constitutionally deficient, Smith suffered no resulting prejudice.

## B. Burden of Proof with Respect to the Testimonial Waiver

Next, Smith advances a closely related claim of error. The SJC, he argues, erroneously (and in contravention of Supreme Court precedent) imposed upon him the burden to demonstrate that his waiver of the right to testify was invalid. Instead, says Smith, the SJC should have required the Commonwealth to prove that he knowingly and intentionally relinquished a known constitutionally protected right. In Smith's view, that error

- 21 -

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  We disagree.

First, nothing in the record suggests that the SJC unreasonably applied the well-established principle that a criminal defendant's waiver of his constitutionally protected right to testify must be both knowing and voluntary.  Indeed, the SJC recognized that the "right to testify on one's own behalf in a criminal case is fundamental" and specifically recognized that any waiver of that right must be both knowing and intelligent.

To be sure, consistent with Massachusetts law, the SJC did require Smith to bear the burden of demonstrating that his waiver of the right to testify at trial was not knowing and voluntary.  Smith, 946 N.E.2d at 105 ("When asserting that errors of counsel deprived him of the right to testify, a defendant has the burden of proving that his waiver of his right to testify was invalid.") (citations and internal punctuation omitted).  The SJC found that Smith failed to carry that burden, and concluded that his waiver was not invalid.  But, with respect to properly allocating the burden of proof regarding testimonial waivers, "the Supreme Court has never articulated the standard for assessing whether a criminal defendant has validly waived his right to

testify or determined who has the burden of production and proof under particular circumstances." Jenkins v. Bergeron, 824 F.3d 148, 153 (1st Cir. 2016) (citing Thompson v. Battaglia, 458 F.3d 614, 619 (7th Cir. 2006)). If federal law is not clearly established by the Supreme Court, "then per force the state court decision cannot be either contrary to or an unreasonable application of clearly established federal law." Jenkins, 824 F.3d at 153 (quoting Likely v. Ruane, 642 F.3d 99, 102 (1st Cir. 2011)).

The absence of controlling Supreme Court precedent establishing which party bears the burden of proof necessarily dooms Smith's assertion that the SJC acted contrary to clearly established federal law when it imposed upon him the obligation to show that his waiver was invalid.

## C. Failure to Support Self-Defense Theory

In his final claim, Smith asserts that trial counsel provided constitutionally deficient representation by failing to marshal (and introduce at trial) available evidence that would have rebutted the armed home invasion charge and supported Smith's claim of self-defense. He argues that the SJC's resolution of that claim on appeal was contrary to, or involved an unreasonable

application of, the standards set out in Strickland. That claim also fails.

In support of his claim, Smith first takes issue with the SJC's statement of facts relevant to his convictions. Then, he paints a picture of the events in question that is supportive of his theory of the case — that he entered Higgs' apartment peacefully and at her invitation, and that he shot the victim in self-defense. Finally, he attempts to persuade the court that trial counsel was ineffective for failing to introduce evidence tending to prove that account. We are not persuaded.

As outlined above, the evidence presented at trial overwhelmingly supported the jury's guilty verdict on the charge of first-degree murder. In rejecting Smith's claim that trial counsel was ineffective by failing to present evidence supportive of Smith's alternate theory of the case, the trial court found that Smith's self-defense theory was unpersuasive and rested largely on an entirely speculative opinion of a ballistics expert who lacked both the knowledge and the qualifications to testify about the matters upon which Smith relies. The SJC agreed, noting that in light of the evidence presented at trial, Smith's theory of the case was not credible and the risks associated with his testifying at trial were substantial.

Smith has not overcome the presumption of correctness afforded to the state court's factual findings, nor has he demonstrated that those factual findings were, in light of the evidence presented at trial, unreasonable. See 28 U.S.C. § 2254(d)(2). Consequently, he cannot show that trial counsel provided constitutionally deficient representation by either failing to call Smith to testify in his own defense or by neglecting to present other unidentified evidence supportive of Smith's version of the events —— quintessentially strategic decisions by counsel, that were supported by the record evidence and to which substantial deference is afforded. See Strickland, 466 U.S. at 689 (admonishing lower courts to afford trial counsel "wide latitude . . . in making tactical decisions."). See also Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) ("[T]his court has held that a lawyer's performance is deficient under Strickland only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.") (citation and internal punctuation omitted).

Because Smith has not, and cannot, show that the SJC's resolution of his second ineffective assistance claim was contrary to, or involved an unreasonable application of, the Strickland standard, the district court properly rejected it.

## Conclusion

For the foregoing reasons, Petitioner has failed to sustain his burden under 28 U.S.C. § 2254(d) as to any of the claims advanced on appeal. The judgment of the district court denying the petition for habeas corpus relief is <u>affirmed</u>.