**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2169
_____

KAY ELLISON,
                                        Appellant

v.

UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-21-cv-16230)
District Judge: Honorable Susan D. Wigenton
_____

Argued: May 7, 2024
_____

Before: MATEY, MONTGOMERY-REEVES, and
ROTH, *Circuit Judges*

(Opinion filed: October 30, 2024)


Cara L. Brack **[ARGUED]**
Megan E. Farrell
Thomas S. Jones
Nelson Mullins
6 PPG Place
7th Floor
Pittsburgh, PA 15222
          *Counsel for Appellant*

Andrew Laing **[ARGUED]**
Jeremy R. Sanders
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue NW
Bond Building, 4th Floor
Washington, DC 20005
　　*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

MATEY, *Circuit Judge*.

Ineffective assistance of counsel claims under the rubric created in *Strickland v. Washington* turn on prejudice, "a reasonable probability" that, but for the attorney's error, "the result of the proceeding would have been different." 466 U.S. 668, 694 (1984). Kay Ellison argues her convictions for federal wire fraud, bank fraud, and conspiracy violate the Sixth Amendment because she relied on her attorney's erroneous advice that if she did not testify, she could not present other evidence. Applying the familiar *Strickland* standard, we agree with the District Court that there is no reasonable probability that this alleged error changed the jury's verdict. So we will affirm the denial of her petition for a writ of habeas corpus.

**I.**

**A.**

Ellison, along with co-defendant Judy Tull, founded and managed a now-defunct charter airline called Southern Sky Air & Tours operating as Myrtle Beach Direct Air & Tours (Direct Air). The Department of Transportation requires charter operators to deposit passengers' payments into an approved bank account and keep the funds escrowed until the flight is completed. 14 C.F.R. Part 380. But Direct Air had cash flow problems. So Ellison siphoned millions of dollars out of the escrow account through fictitious "dummy" passenger reservations and falsified corporate records. When the scheme

2

was uncovered, the United States charged both Ellison and Tull with conspiracy to commit wire fraud and bank fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. §§ 1343 and 2, and bank fraud in violation of 18 U.S.C. §§ 1344 and 2.

Ellison and Tull proceeded to a jury trial, and Ellison opted not to present a defense. Her counsel stated, outside the presence of the jury, that he had "explained to [Ellison] the decision to testify or not to testify was hers and hers alone to make" and that Ellison had decided "not to testify and not to call witnesses on her behalf." App. 363. The trial court then questioned Ellison on the record:

> Court: All right. And have you had the opportunity to discuss with [counsel], . . . *your right not to testify as well as your right not to put on a case*, as you have no burden in this matter, the burden rests with the Government for the entire case[?] Have you had those discussions with [counsel]?
>
> Ellison: Yes, ma'am.
>
> Court: And understanding, after you've had those discussions with [counsel], has it been your decision voluntarily to waive your right to testify in this matter?
>
> Ellison: Yes, ma'am.

App. 364–65 (emphasis added). The jury convicted Ellison and Tull of all counts. Ellison was sentenced to ninety-four months' imprisonment and ordered to pay $19,663,429.50 in restitution. We affirmed her convictions on direct appeal. *See United States v. Ellison*, 804 F. App'x 153, 158 (3d Cir. 2020).

**B.**

Ellison then moved to vacate her sentence, pursuant to 28 U.S.C. § 2255, claiming her trial counsel incorrectly advised her that if she declined to testify at trial, she could not present other witnesses or evidence. Ellison argued this advice

3

prejudiced her defense by depriving her of the opportunity to contest key portions of the Government's case.[1] The District Court denied Ellison's motion without an evidentiary hearing and declined to issue a certificate of appealability. In reaching its decision, the District Court did not directly address Ellison's allegation that counsel erroneously advised her of a contingent link between the right to testify and the right to present a defense. Rather, the District Court concluded that, even assuming Ellison could prove counsel was ineffective, her claim would still fail because she could not show prejudice.[2] Accepting as true Ellison's statements of the nature of the expected testimony,[3] the District Court focused the prejudice inquiry on "whether there is a reasonable probability . . . that if Ellison had testified herself and presented the testimony of her proposed witnesses, the jury would have acquitted." App. 61. And it found no such possibility:

> Ellison's defense, with or without the proposed witness testimony, was

---

[1] Ellison's petition described her intended trial testimony, as well her own "brief summary" of the intended testimony of her twelve proposed witnesses. App. 129; *see also* App. 127–33.

[2] "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts often address the prejudice prong first where it disposes of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

[3] Although Ellison swore to *her own* understanding of what her proposed witnesses "were prepared to testify to" at trial, App. 129, she did not provide any sworn statements from the witnesses themselves. But showing *Strickland* prejudice "may not be based on mere speculation about what the witnesses . . . might have said." *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989). Rather, "[u]nder usual circumstances," we expect that "information [obtainable through an adequate investigation] would be presented to the habeas court through the information of the potential witnesses." *Duncan v. Morton*, 256 F.3d 189, 202 (3d Cir. 2001) (alteration in original) (quoting *Gray*, 878 F.2d at 712). Ellison made no such presentation.

dependent on the jury concluding . . . that the DOT regulation permitted (1) charter airlines to sell vouchers and take membership and luggage fees out of escrow before passenger flights had been completed; and (2) to withdraw from the escrow account without flight by flight accounting of the funds. The jury rejected this argument and there is nothing about the proposed defense testimony that makes it . . . more persuasive in light of the DOT's position that voucher sales were never permitted and withdrawals from escrow required a flight by flight accounting. The uncontradicted evidence of Direct Air's continuous losses and high fuel bills makes it unlikely the jury would believe the escrow shortage was caused solely by undiscovered computer errors and that there was no intent to deceive the banks. Evidence of Ellison's involvement in running Direct Air makes it unlikely the jury would conclude she was not involved in the inflation of the year-end financial statements.

App. 81.

A motions panel of this Court then granted Ellison a certificate of appealability as to whether the District Court should have addressed Ellison's "assertion that her counsel advised her that the right to testify was linked to the right to present a defense." [4] App. 83. The order directed the parties to

---

[4] The motions panel denied a certificate of appealability for all other claims, including whether Ellison demonstrated prejudice under the outcome-based standard applied by the District Court. But the panel also referred "[t]he question of whether a certificate of appealability is required to challenge the District Court's denial of an evidentiary hearing." App. 84.

5

address "whether Ellison's ineffectiveness claim should be analyzed using the standard for prejudice set forth in *Palmer v. Hendricks*, 592 F.3d 386, 397–99 (3d Cir. 2010), or whether the analysis in *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 857 (3d Cir. 2017), requires [this Court] to revisit that standard." App. 84.[5]

## II.

*Strickland* announced the now-familiar test for claims of ineffective assistance. *First*, "the defendant must show that counsel's performance was deficient." 466 U.S. at 687.[6]

---

We agree with both Ellison and the Government that the certificate of appealability statute applies only to "final order[s]" in § 2255 proceedings, *see* 28 U.S.C. § 2253(c)(1)(B), and does not explicitly cover interlocutory orders, such as the denial of a request for an evidentiary hearing. *See Harbison v. Bell*, 556 U.S. 180, 183 (2009) (explaining that § 2253(c)(1) refers to orders that "dispose of the merits" of the proceeding). But that conclusion does not affect our jurisdiction. An order denying an evidentiary hearing on an ineffective-assistance claim is not independently appealable under the collateral order doctrine. *See In re Grand Jury*, 705 F.3d 133, 144–45 (3d Cir. 2012) (noting that to be immediately appealable, an interlocutory order must be "effectively unreviewable on appeal from the final judgment in the underlying action") (internal quotation marks omitted). Rather, under the merger rule, that order would "merge into the final judgment" denying the § 2255 motion itself, and then "may be challenged on appeal from that judgment." *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 377 (3d Cir. 2005). That is what happened here.

[5] The District Court exercised jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. §§ 1291, 2253(c)(1)(B), and 2255(d). On the denial of a § 2255 motion, we "review legal conclusions de novo and factual findings for clear error." *United States v. Folk*, 954 F.3d 597, 601 (3d Cir. 2020).

[6] The District Court assumed that Ellison's attorney was ineffective, and we do the same. *See* App. 61; *Cross*, 308 F.3d at 315.

*Second*, "the defendant must show that the deficient performance prejudiced the defense." *Id.*

**A.**

"[P]rejudice is defined in different ways depending on the context in which it appears." *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017). When an attorney's error occurs during trial or another legal proceeding that is "sufficiently like a trial in its adversarial format and in the existence of standards for decision,"[7] "[t]he defendant must show that there is a reasonable probability[8] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 at 686–87, 694. In these cases, the prejudice analysis is conceptually clear-cut because we generally presume that trials and "trial-like" proceedings are reliable, aside from the alleged error. *Id.* at 695 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision."). So to evaluate prejudice, we look at the "result of the proceeding" and consider the likelihood that, absent the ineffective assistance, that result "would have been different." *Id.* at 693, 694.

**B.**

But where counsel's misstep occurs outside trial or a "trial-like" context, *Strickland*'s prejudice prong is less intuitive. As a result, the Supreme Court has, at times, retrofitted the test for claims arising from other stages of the adjudicative process. For example, *Hill v. Lockhart*—decided one year after *Strickland*—involved an ineffective-assistance claim arising from a guilty plea. 474 U.S. 52, 53 (1985). There, counsel allegedly misadvised the defendant about the length of

---

[7] *See Strickland*, 466 U.S. at 686–87 (analogizing capital sentencing to trial).

[8] A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

his statutorily required parole term, and the defendant claimed that made his guilty plea involuntary and unintelligent. *Id.* at 55–56. The Court made clear that the "two-part *Strickland* . . . test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. But on the prejudice prong, it did not conduct a *Strickland* "outcome-based" analysis—*i.e.*, asking whether the defendant would have still been convicted had he proceeded to trial rather than pleading guilty. Instead, the Court adopted a "process-based" standard, under which the defendant could demonstrate prejudice merely by showing that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Over several decades, the Court has only applied *Hill*'s process-based standard for prejudice to a narrow class of ineffectiveness claims, including where counsel deficiently advised the defendant to reject a plea deal, *see Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012), or counsel failed to file a notice of appeal, *see Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). In those cases, the Court explained that the defendant must instead show

> a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed

*Lafler,* 566 U.S. at 164, or "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed," *Flores-Ortega*, 528 U.S. at 484. In these cases, the Supreme Court has presumed prejudice, "with no further showing from the defendant o[n] the merits of [the] underlying claim[]," where the ineffective assistance "rendered the proceeding presumptively unreliable or entirely nonexistent." *Flores-Ortega*, 528 U.S. at 484; *see also Lafler*, 566 U.S. at 168–89.

8

## III.

Ellison argues that *Strickland*'s outcome-based prejudice test is irrelevant because her counsel's ineffective assistance deprived her of both her right to testify and her right to present a defense,[9] and thus the process-based prejudice test should apply. We disagree, and our decisions in *Palmer* and *Vickers* explain why.

### A.

As here, *Palmer* involved counsel allegedly failing to advise that the defendant alone could decide whether to testify. 592 F.3d at 394. The petitioner later claimed that, had he been properly advised, he would have told the jury "[his] side of what really happened." *Id.* at 390. But he did not offer any details on his proposed testimony, let alone any factual analysis of how his testimony would have swayed the jury. *See id.* at 395. Like Ellison, the petitioner in *Palmer* insisted that he was not required to show prejudice to prevail on his claim because depriving him of the right to testify is a "structural defect in the entire trial process that requires automatic reversal[.]" *Id.* at 396–97 (internal quotation marks omitted). But we rejected that argument, *see id.* at 397–99,[10] and concluded there could

---

[9] A right the Supreme Court announced in *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987).

[10] A conclusion shared by every other circuit court to consider the issue, *see Palmer*, 592 F.3d at 397–98 (collecting cases), and still consistent with more recent decisions, *see, e.g.*, *Hartsfield v. Dorethy*, 949 F.3d 307, 312–16 (7th Cir. 2020) (finding it "not reasonably probable that [the petitioner's] proposed testimony would have affected the jury's verdict" and noting "the unanimous weight of authority" rejecting the contention that a defendant "need not show prejudice when the case involves the right to testify"); *Smith v. Dickhaut*, 836 F.3d 97, 106 (1st Cir. 2016) (finding no prejudice in a right-to-testify claim because petitioner failed to show "that, had he testified, there is a reasonable probability that the outcome of his trial would have been different").

9

be no prejudice under *Strickland* because the petitioner did not show "'that the decision reached'" at his trial "'would reasonably likely have been different absent the errors,'" *id.* at 395–96 (quoting *Strickland*, 466 U.S. at 696).

**B.**

Our decision in *Vickers* does not change the application of the *Strickland* prejudice standard to the case before us. There, the petitioner claimed ineffective assistance based on counsel's advice to forgo his right to a jury trial and choose a bench trial instead. *Vickers*, 858 F.3d at 844–46. Following *Strickland*, our precedent at the time required showing that a jury trial would have resulted in a more favorable outcome than the bench trial. *See United States v. Lilly*, 536 F.3d 190, 196–97 (3d Cir. 2008). But *Vickers* reasoned that later Supreme Court decisions like *Lafler* require applying the process-based test for prejudice, not the traditional outcome-based prejudice inquiry. 858 F.3d at 857.[11] Accordingly, the question became "whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise [the] right [at issue]." *Id.*

---

We have continued to demand prejudice in right-to-testify cases since *Palmer*. *See, e.g.*, *Ruiz v. Superintendent Huntingdon SCI*, 672 F. App'x 207, 212 (3d Cir. 2016) (finding "no reasonable probability that the outcome would have been different had [the petitioner] testified at his trial" because his "proposed testimony would not have changed an objective factfinder's view of all of the evidence"); *United States v. Aldea*, 450 F. App'x 151, 153 (3d Cir. 2011) (finding no prejudice because the petitioner's testimony "would not have undermined the verdict"). And we reaffirmed this aspect of *Palmer* just over two years ago. *See Lesko v. Sec'y Pa. Dep't of Corr.*, 34 F.4th 211, 236–37 (3d Cir. 2022).

[11] We reasoned that our "holding regarding the appropriate prejudice inquiry in this context" merely "align[ed] *Lilly* with the Supreme Court's subsequent decision in *Lafler*," and thus "d[id] not necessitate en banc review." *Vickers*, 858 F.3d at 857 n.15.

**IV.**

The *Palmer* outcome-based prejudice standard, not the *Vickers* process-based prejudice standard, controls here. This is because showing "actual prejudice" is required where the alleged error occurs within a judicial proceeding that is otherwise "presumptively reliable." *Flores-Ortega*, 528 U.S. at 484. That must include right-to-testify claims like Ellison's, because the error in those cases (*i.e.*, failing to present testimony from the defendant or other defense witnesses) occurs "'during the presentation of the case to the jury' and 'may therefore be quantitatively assessed in the context of other evidence presented in order to determine'" what effect, if any, it had on the jury's verdict. *Palmer*, 592 F.3d at 397 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–08 (1991)). The prejudicial effect will necessarily depend on the significance of the facts to which the defendant and her witnesses might have testified, evaluated alongside the rest of the evidence produced at trial. *Id.* at 399. So, following *Palmer*, Ellison needed to show a reasonable probability that, but for counsel's errors, she would have exercised her trial rights, and that doing so would have changed the result. That is the analysis the District Court correctly conducted.[12]

The cases Ellison relies on are distinguishable because they involved the forfeiture of *entire proceedings* to which the defendant was entitled—a trial rather than a plea (*Hill*), an appeal (*Flores-Ortega*), a plea rather than a trial (*Lafler*), and a jury trial instead of a bench trial (*Vickers*). But that did not happen here. Waiving the right to testify or call witnesses is not tantamount to forfeiture of the entire proceeding, nor does

---

[12] In so observing, we are mindful of the confines of the certificate of appealability, limited to whether the District Court applied the correct legal standard for prejudice under *Strickland*. Because we hold that it did, we "will not consider" arguments challenging the District Court's conclusion after applying that standard, as they are "not within the scope of the issue on which we granted a certificate of appealability." *Miller v. Dragovich*, 311 F.3d 574, 577 (3d Cir. 2002).

it render the trial per se "fundamentally unfair."[13] *Strickland*, 466 U.S. at 700; *cf. Vickers*, 858 F.3d at 857. Rather, "when a defendant states, 'I would have testified to X, Y, and Z, but my attorney would not put me on the stand,' the significance of such testimony can be evaluated in the context of the remainder of the evidence in order to assess the impact of the constitutional violation." *Palmer*, 592 F.3d at 399. We conclude from this that *Palmer*'s outcome-based prejudice standard is the appropriate one in Ellison's ineffective-assistance case.

*     *     *

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Because Ellison failed to demonstrate that her attorney's alleged error affected the jury's verdict, we will affirm the District Court's denial of her petition for a writ of habeas corpus.

---

[13] Of course, "[t]here are good tactical reasons why it may not be best for the defendant to testify in some circumstances." *United States v. Teague*, 953 F.2d 1525, 1533 n.9 (11th Cir. 1992). "Some examples might be if the defendant might provide evidence of missing elements of the crime on cross-examination, if the defendant might be prejudiced by revelation of prior convictions, or if the prosecutor might impeach the defendant using a prior inconsistent statement." *Id.* It would thus misstate both law and common practice to suggest that waiving the right to testify or call witnesses "so undermine[s] the proper functioning of the adversarial process that," in general "the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.