NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2243
_____

TITO RIVERA,
Appellant

v.

SUPERINTENDENT HOUTZDALE SCI;
THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA;
SUPERINTENDENT KEN CAMERON;
THE DISTRICT ATTORNEY OF ALLEGHENY COUNTY
_____

On Appeal from United States District Court
for the Western District of Pennsylvania
(W. D. Pa. No. 2-13-cv-01394)
Magistrate Judge: Honorable Cynthia R. Eddy
_____

Argued December 11, 2017
Before: RESTREPO, GREENBERG and FISHER, *Circuit Judges*.

(Filed: June 19, 2018)

R. Damien Schorr, Esq. **ARGUED**
1015 Irwin Drive
Pittsburgh, PA 15236

Rusheen R. Pettit, Esq. **ARGUED**
Allegheny County Office of District Attorney
436 Grant Street
Pittsburgh, PA 15219

---
OPINION[1]
---

FISHER, *Circuit Judge*.

Tito Rivera, a prisoner of the Commonwealth of Pennsylvania, seeks federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. Rivera claims that his due process rights were violated by the inappropriate pre-trial transfer of his case to a new, allegedly harsher judge.

Rivera was convicted of rape and several other violent offenses. After his direct appeal concluded and his sentence was affirmed, Rivera learned, through an article published by the Pittsburgh Post-Gazette, that a court employee sent an e-mail to a court administrator that appeared to ask for the reassignment of Rivera's case to a different judge. That court employee was the uncle of one of the victims. The case was later reassigned to Judge McDaniel, who presided over the jury trial and imposed the sentence.

Rivera presents two issues on appeal from the District Court's denial of his habeas application: whether the case transfer violated his due process rights, and whether the District Court abused its discretion by declining to conduct an evidentiary hearing on his due process claim. We conclude that the District Court abused its discretion by declining to conduct an evidentiary hearing on Rivera's due process claim and remand for a hearing

---

[1] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

to be held. We will therefore not reach the question of whether Rivera's due process rights were violated.

I.

A. Factual History

In 2007, Rivera approached two male college students outside of their house in the Oakland neighborhood of Pittsburgh, eventually drawing a gun (later determined to be a BB gun that looked convincingly like the real thing). Rivera forced the students into their house. The students' three housemates were also present inside the house, as was one of their girlfriends. Rivera threatened to kill all of them and demanded money. After taking their money, he forced the woman into the adjoining bathroom and raped her. Returning to the room where the men were, Rivera ordered them to pack up other visible valuables and to prepare to go to a nearby ATM to withdraw more money. Realizing that Rivera was no longer holding a gun, one of the men jumped on him. The others helped to restrain Rivera while the woman ran out of the house and summoned the police.

Rivera was charged with Rape, Involuntary Deviate Sexual Intercourse, Indecent Assault, Simple Assault, Burglary, and six counts of Robbery and Terroristic Threats. Judge McDaniel presided over the trial in the Allegheny County Court of Common Pleas. Before the beginning of trial, Judge McDaniel made the following statement on the record: "I have spoken to both counsel and told them that the alleged victim in this case is a relative of George Matta, who was Clerk of Courts who I worked with. They both said they saw no conflict nor do I feel any prejudice." Appellant's Br. at 16. Matta was the

3

uncle of the rape victim, and served as Clerk of Courts until a few months before the beginning of the trial. A jury found Rivera guilty of all charges except Simple Assault.

Judge McDaniel sentenced Rivera to an aggregate term of 80–160 years. He filed a direct appeal to the Pennsylvania Superior Court, which affirmed. Four days after his direct appeal concluded, the Pittsburgh Post-Gazette published an article describing an e-mail from Matta, then serving as the Clerk of Courts, to Helen Lynch, the criminal court administrator responsible for case assignments. This e-mail was sent ten days before Matta's position as Clerk of Courts would be eliminated, three weeks before the trial was originally scheduled, and five months before the trial actually began. The record does not contain the full contents of the e-mail, only the portion quoted by the Post-Gazette. The portion of the article containing e-mail excerpts reads as follows:

> "Helen, Happy New Year. I looked up my [relative's trial] and it is set for Jan. 23, [2008] with Judge Sasinoski. I thought it was going to be heard by Donna Jo . . . ."
>
> Mr. Matta noted that his relative was abroad at the time. "She will not be back till the next week. Can you have this changed?"
>
> The note concluded with: "Thanks and I appreciate all your and the Judge's good words and friendship. I truly will miss working with you guys and am hoping that we will at least do lunch every so often."

App. 28 (alterations in original) ("Donna Jo" referring to Judge Donna Jo McDaniel). At the time of Rivera's trial, Judge McDaniel handled the majority of sexual assault and rape cases while Judge Sasinoski handled the majority of drunk driving cases.

4

B.     Procedural History

Rivera filed a *pro se* petition for relief pursuant to Pennsylvania's Post Conviction Relief Act (PCRA) in 2011. His appointed attorney filed a "No Merit" letter and moved to withdraw as counsel. The PCRA court dismissed the petition without an evidentiary hearing. Rivera filed an appeal to the Pennsylvania Superior Court, claiming four grounds for relief including the violation of his rights under the Pennsylvania and United States Constitutions due to the inappropriate reassignment of his case. The Superior Court affirmed the dismissal of the PCRA petition. It identified Rivera's due process claim as "his case [being] inappropriately reassigned to the trial court by the clerk of courts, a relative of one of [Rivera's] victims." *Commonwealth v. Rivera*, No. 310 WDA 2012, 2013 WL 11287687, at *6 (Pa. Super. Ct. Jan. 28, 2013). The Superior Court rejected his claim, holding that "to the extent Appellant claims trial court error, because Appellant could have raised this claim on direct appeal, it is waived under the PCRA." *Id.* The Superior Court further held that "any claim of trial counsel's ineffectiveness for failing to object to the reassignment is meritless" because Rivera failed to show prejudice. *Id*. The Pennsylvania Supreme Court denied further review.

Rivera filed a *pro se* petition for a writ of habeas corpus in the District Court, raising five claims. All five were denied, but only one is relevant to this appeal: Rivera's claim that his constitutional rights were violated when his case was reassigned to Judge McDaniel after being initially assigned to Judge Sasinoski. The District Court erroneously considered only the standard for ineffective assistance of counsel, not the

5

underlying due process claim, when it determined that the state court's ruling was not an unreasonable application of law or determination of facts.

We granted a certificate of appealability as to Rivera's claim "that his due process rights were violated when his case was transferred by a court employee, who was a relative of the victim, to the employee's preferred judge" and "that there was a[n] unconstitutional potential for bias when the court employee used his position to obtain what he believed was a more favorable outcome with the judge who presided over Rivera's trial, sentencing, and post-conviction proceedings." App. 24. The certificate of appealability also included "whether the District Court should have conducted an evidentiary hearing on Rivera's due process claim." App. 25. The certificate directed the parties to address waiver and procedural default. The Government concedes that there was no procedural default, and we agree.

II.

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253.

The District Court's decision to grant or deny an evidentiary hearing is reviewed for abuse of discretion. *Morris v. Beard*, 633 F.3d 185, 193 (3d Cir. 2011). "Because the District Court did not conduct an evidentiary hearing and engaged in no independent fact finding, we apply de novo review to its factual inferences drawn from the state court record and its legal conclusions, including the grant of habeas relief." *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 475 (3d Cir. 2017), *cert. denied* 2018 WL

6

1509846 (Apr. 30, 2018). We therefore apply "the same standard [of review] that the District Court was required to apply." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009)). To determine what standard the District Court should have applied, we must consider the state court decision.

AEDPA restricts federal court review where the state court has adjudicated a claim on the merits. 28 U.S.C. § 2254(d) (relief shall not be granted unless the state court decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts"). Rivera's claim was not decided on the merits in state court. Rather, the Superior Court denied his due process claim as "waived under the PCRA" because he "could have raised this claim on direct appeal." *Rivera*, 2013 WL 11287687, at *6. The government concedes that Rivera's due process claim is not waived or procedurally defaulted by his failure to raise it on direct appeal because he did not learn of Matta's e-mail until the publication of the Post-Gazette article, which was after Rivera's direct appeal concluded. Appellee's Br. at 24. The Superior Court's additional analysis treated the claim as an ineffective assistance of counsel claim. Because the Superior Court ended Rivera's state appeal with a decision that was not on the merits, AEDPA does not require the deferential review of 28 U.S.C. § 2254(d). *Thomas*, 570 F.3d at 117. We therefore review his legal claim *de novo*. *Id*.

III.

Rivera claims that he is entitled to habeas relief because his due process right to an unbiased trial was violated and argues that the District Court abused its discretion when it declined to hold an evidentiary hearing. We agree that the District Court should have held a hearing. Because we will remand for a hearing, we will not now reach the question of whether Rivera's due process rights were in fact violated by Matta's e-mail about the judicial assignment.

A. Evidentiary Hearing

Federal courts reviewing state-court decisions on the merits under § 2254(d) are limited to the state-court record. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As explained above, the state court did not adjudicate Rivera's constitutional claim on the merits. Therefore, § 2254(d) does not bar an evidentiary hearing. *Id.* at 185–86. Where § 2254(d) does not bar federal habeas relief, § 2254(e) "still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Id*. at 186.

1. Evidentiary hearing is not barred by 28 U.S.C. § 2254(e)(2)

A state prisoner who failed to develop the factual basis of his claim in state court is barred from receiving an evidentiary hearing in federal court unless he satisfies certain exceptions. 28 U.S.C. § 2254(e)(2). A prisoner does not fail to develop the factual basis if he "was diligent in his attempt to develop a factual basis for his claim in the state court proceedings." *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *see also Williams*

8

*v. Taylor*, 529 U.S. 420, 432 (2000) ("Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."). If Rivera pursued his claim with diligence in the state court, but the claim remained undeveloped, he is eligible for an evidentiary hearing. *Han Tak Lee v. Glunt*, 667 F.3d 397, 406 (3d Cir. 2012).

"Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams v. Taylor*, 529 U.S. at 435. Diligence requires "in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

Here, Rivera pursued his due process claim diligently in state court. Rivera requested but was denied an evidentiary hearing in the PCRA court. This request constituted sufficient diligence under § 2254(e)(2). *Thomas*, 570 F.3d at 125–26 (holding that petitioner showed sufficient diligence to escape the bar of § 2254(e)(2) by requesting an evidentiary hearing in PCRA court to develop factual record); *see also Lee,* 667 F.3d at 406 (holding that petitioner was diligent when he filed motion for access to evidence, but motion was denied, depriving him of further opportunity to investigate).

2. An evidentiary hearing was warranted

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing

9

rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). That discretion is guided by two considerations: "(i) 'whether the petition presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim,' and (ii) whether the relevant factual allegations to be proven at the evidentiary hearing are 'contravened by the existing record' or the record 'otherwise precludes habeas relief.'" *Lee*, 667 F.3d at 406–07 (quoting *Palmer*, 592 F.3d at 393).

### *i. Prima facie showing*

Rivera's petition presents a prima facie showing which, if proven, would allow him to prevail on the merits. Rivera outlined four allegations or bases for relief which he claims meet the objective standards for constitutional judicial disqualification:

(1) a[n] elected criminal court official arrange[d] for the transfer of a case;
(2) where his niece is the victim of a violent sexual assault;
(3) to a judge with whom he has a "friendship"; and
(4) that judge is known to impose harsh sentences on sex offenders.

Appellant's Reply Br. at 4. An evidentiary hearing would allow Rivera the opportunity to discover the full text of Matta's e-mail as well as other relevant evidence, including any subsequent communications between and among the court administrator, Matta, and Judge McDaniel. For the reasons explained below, additional evidence may prove that Rivera's due process rights were violated. Neither the Pennsylvania Superior Court nor the District Court undertook this inquiry. Under our *de novo* review, we undertake it now.

10

"It is axiomatic that 'a fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (alteration omitted) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). To ensure the protection of that right, the Supreme Court has held that recusal is required when, "objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Recognizing that actual bias cannot always be determined, the Supreme Court relies on an objective standard asking "whether, as an objective matter, 'the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (quoting *Caperton*, 556 U.S. at 881). In *Tumey v. Ohio*, the Supreme Court held that "[e]very procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law." 273 U.S. 510, 532 (1927).

In both *Caperton* and *Williams v. Pennsylvania*, the Supreme Court concluded that state justices, who had themselves considered and denied motions for their recusal, were constitutionally disqualified. *See Caperton*, 556 U.S. at 873–74, 886; *Williams v. Pennsylvania*, 136 S. Ct. at 1905, 1908 (noting that "[b]ias is easy to attribute to others and difficult to discern in oneself"). The risk of bias in *Caperton* stemmed from the justice's connection to a litigant who had provided a disproportionately large portion of

11

the donations that funded the justice's state Supreme Court campaign just before that case came before the court. 556 U.S. at 873. The Court asked whether, "'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'pose[d] such a risk of actual bias or prejudgment'" in a case where the litigant may have sponsored the justice's campaign for just this purpose. *Id*. at 883–84 (quoting *Withrow*, 421 U.S. at 47). It concluded there was indeed "a serious, objective risk of actual bias that required . . . recusal." *Id.* at 886. In *Williams v. Pennsylvania*, the risk of bias occurred because of a justice's decades-prior involvement in the prosecution of the habeas applicant. 136 S. Ct. at 1904, 1907. The Court characterized the risk of bias as "reflected in the due process maxim that 'no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.'" *Id*. at 1905–06 (quoting *Murchison*, 349 U.S. at 136). This Court has held that a judge was statutorily disqualified when he, "in stark, plain and unambiguous language, told the parties that his goal in the criminal case, from the beginning, was something other than what it should have been and, indeed, was improper." *United States v. Antar*, 53 F.3d 568, 576 (3d Cir. 1995), *overruled on other grounds by Smith v. Berg*, 247 F.3d 532, 534 (3d Cir.2001). Similar concerns arise here if Matta's communications influenced Judge McDaniel's goal in Rivera's case.

Here, Judge McDaniel's personal relationship with the uncle of the victim would not alone require her recusal on constitutional grounds. *See Caperton*, 556 U.S. at 876 ("matters of kinship . . . would seem generally to be matters merely of legislative discretion"); *Johnson v. Carroll*, 369 F.3d 253, 262 (3d Cir. 2004) (explaining that the

Supreme Court has never held "that an appearance of bias on the part of a judge, without more, violates the Due Process Clause"). However, the added possibility that Matta, an officer of the Court who had a personal interest in the outcome, may have interceded, could require her recusal.

Matta's e-mail provides support for Rivera's allegation that Matta interfered in the assignment of a case in which his niece was the victim of a vicious rape and robbery, and that Matta did so with the purpose of securing a harsher sentence for Rivera. As the Supreme Court explained in *Caperton*, "[j]ust as no man is allowed to be a judge in his own cause, similar fears of bias can arise when—without the consent of the other parties—a man chooses the judge in his own cause." *Caperton*, 556 U.S. at 886. Because no hearing has been conducted on this issue, the excerpts of the e-mail are the only available evidence. We do not know whether Judge McDaniel knew of Matta's intercession. Rivera's offer of the *Post-Gazette* article provides a prima facie showing of intolerable interference by Matta which could have caused the "probability of actual bias" of Judge McDaniel to be "too high to be constitutionally tolerable." *Rippo*, 137 S. Ct. at 907.

### ii. Existing record

Rivera's factual allegations are not contradicted by the record and the record does not otherwise preclude habeas relief. There has been no evidentiary hearing in any court, so the record is devoid of evidence contradicting Rivera's claims. We have only his offer

of the *Post-Gazette* article. That article neither proves nor disproves Rivera's allegations. Nothing else in the record precludes habeas relief.

An evidentiary hearing is not precluded by § 2254(e)(2), and it could advance Rivera's claim. We conclude that such a hearing is warranted.

IV.

For the foregoing reasons, we will vacate the District Court's order in part and remand for an evidentiary hearing on the question of whether Rivera's due process rights were violated by the reassignment because of an unconstitutional potential for bias.